DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of robbery, one count of burglary and one count of receiving stolen property. For the reasons that follow, this case is affirmed in part and reversed in part.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "First Assignment of Error
 {¶ 4} "Defendant Appellant's sentences should be reversed as the trial court failed to comply with the mandates of revised code §2919.14 when it imposed the maximum sentence, and when it imposed consecutive sentences. The court's imposition of these sentences is not supported by the record.
 {¶ 5} "Second Assignment of Error
 {¶ 6} "The trial court erred when it ordered the defendant-appellant to pay unspecified fees and expenses.
 {¶ 7} "Third Assignment of Error
 {¶ 8} "Defendant-Appellant's convictions are not supported by sufficient evidence and are therefore a denial of due process.
 {¶ 9} "Fourth Assignment of Error
 {¶ 10} "Defendant-Appellant's convictions are against the manifest weight of the evidence."
 {¶ 11} The facts that are relevant to the issues raised on appeal are as follows. On May 23, 2001, at approximately 12:00 a.m., as 90-year-old Glenn Crosby drove through downtown Toledo he was hit from behind by another car. When Crosby stepped out to see what happened, he was accosted by a man who took his money, keys and other personal possessions and drove away with his car, leaving Crosby alone on the street. Crosby then sought assistance from a man he spotted nearby who helped him call the police. Eventually, the police took Crosby to his son's house to get another house key and he and his son went to spend the rest of the night at Crosby's house. At approximately 5:00 a.m., Crosby awoke to discover that his house had been broken into and he again called the police. At approximately 7:00 a.m., Crosby's stolen car was spotted by the police. A brief chase ensued and when the officers rounded a corner in their patrol car they saw appellant running away from Crosby's abandoned car. After several officers pursued appellant on foot, they found him hiding in a boat in a nearby backyard. Police found appellant's watch in the boat in the spot where appellant had been lying. Police also found in Crosby's car a wastebasket which Crosby identified as having been taken from his home that morning.
 {¶ 12} On May 1, 2001, appellant was indicted on one count of robbery in violation of R.C. 2911.02(A)(2), one count of burglary in violation of R.C. 2911.12(A)(1) and one count of receiving stolen property in violation of R.C. 2913.51. Appellant pled not guilty and, following trial to a jury, was found guilty on all three counts. The trial court sentenced appellant to eight years in prison on the robbery conviction, seven years on the burglary conviction and 12 months on the conviction for receiving stolen property. The sentence for the robbery conviction was the maximum possible for that offense; the other two sentences were greater than the minimum but less than the maximum for those offenses. The trial court further ordered the sentences to be served consecutively. The court also ordered appellant to pay any restitution, all costs of prosecution, the cost of court-appointed counsel and any fees permitted under R.C. 2929.18(A)(4).
 {¶ 13} This court notes at the outset that appellee concedes the errors set forth by appellant in his first and second assignments of error. Nevertheless, we will review those claimed errors before ruling on the assignments of error.
 {¶ 14} In his first assignment of error, appellant asserts that the trial court failed to comply with the mandates of R.C. 2919.14 for imposition of maximum and consecutive sentences. Appellee agrees. This court has carefully reviewed the trial court's judgment entry and the transcript of the sentencing hearing as well as the applicable law and we find this argument well-taken. While the trial court did order the three sentences to be served consecutively as appellant asserts, we note that, contrary to appellant's claim, the court did not impose maximum sentences for all three offenses. Although the sentences imposed for burglary and receiving stolen property were more than the statutory minimum for each, the only offense for which a maximum sentence was imposed was robbery.
 {¶ 15} The Supreme Court of Ohio has recently held that R.C.2929.14(E)(4) and 2929.19(B)(2)(c) require a trial court to make its statutorily enumerated findings regarding consecutive and maximum sentences, and state its reasons for those findings, at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165. Prior toComer, this court and others throughout the state had held that a trial court's findings and the reasons for consecutive sentences could be made either orally at the sentencing hearing or in written form in the journal entry.
 {¶ 16} A trial court must first consider the factors set forth in R.C. 2929.12(B) and (C) to determine how to accomplish the overriding purposes of felony sentencing embraced in R.C. 2929.11, Comer, supra, and may not impose consecutive sentences for multiple offenses unless it finds the existence of three factors set forth in R.C. 2929.14(E)(4). Pursuant to that statute, the trial court must: 1) find that consecutive sentences are necessary to protect the public from future crime or to punish the offender; 2) find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and 3) find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c).
 {¶ 17} Further, when imposing consecutive sentences, the trial court must comply with R.C. 2929.19(B), which governs the sentencing hearing. R.C. 2929.19(B)(2) provides that the sentencing court "shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in all of the following circumstances:
 {¶ 18} "***
 {¶ 19} "(c) If it imposes consecutive sentences under [R.C.]2929.14."
 {¶ 20} Again, pursuant to Comer, supra, the trial court must make these findings orally at the sentencing hearing and must give its reasons in support of the findings at the hearing. As the Comer court reasoned, there are practical reasons for this holding as well, in that all interested parties are present at the sentencing hearing, an in-court explanation gives counsel the opportunity to correct obvious errors, and it encourages judges to decide how the statutory factors apply to the facts of the case. Comer at ¶ 22. Comer noted that R.C. 2929.14(B)(2) requires the court to make certain findings "on the record" and construed those words to mean that oral findings must be made at the sentencing hearing. Comer at ¶ 26.
 {¶ 21} This court has thoroughly reviewed the transcript of appellant's sentencing hearing and we find that the trial court did not make the mandatory findings set forth in the relevant statutes as cited above or give sufficient reasons for imposing the consecutive sentences at the hearing.
 {¶ 22} We next consider the maximum sentence imposed for appellant's robbery conviction. R.C. 2929.14(B) and (C) govern the imposition of minimum and maximum sentences for felonies. This court has stated that the imposition of more than the minimum sentence to one first imprisoned, or the imposition of the maximum authorized sentence, requires that the sentencing court make clear on the record that it has considered all of the factors required by statute. See State v. Weidinger(June 30, 1999), Huron App. No. H-98-035.
 {¶ 23} The Supreme Court of Ohio has held that R.C. 2929.14(B) does not require that the trial court give its reasons for finding that either of the two factors exist before it can lawfully impose more than the minimum authorized sentence, but has concluded that "the verb `finds' as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v. Edmonson (1999), 86 Ohio St.3d 324,326.
 {¶ 24} The trial court in this case stated that it had considered the record, the oral statements and the principles and purposes of sentencing under R.C. 2929.11 and R.C. 2929.12. The court further stated that it had carefully balanced the seriousness and recidivism factors under R.C. 2929.12. At the sentencing hearing, the trial court commented that despite appellant's eight separate felony convictions which led to five prison sentences, appellant still chose to break the law, and found that he posed the greatest likelihood of recidivism. The trial court also noted that the victim was 90 years old. These statements were sufficient for the trial court to have imposed more than a minimum sentence for burglary and receiving stolen property, as well as a maximum sentence for robbery.
 {¶ 25} Based on our review of the record and the law, this court finds that the trial court failed to comply with the requirements of R.C. 2929.14 for imposition of consecutive sentences but did comply with the other statutory requirements including imposition of a maximum sentence. Accordingly, appellant's first assignment of error is well-taken in part and not well-taken in part.
 {¶ 26} In his second assignment of error, appellant asserts that the trial court erred by ordering him to pay unspecified fees and costs. As stated above, appellee concedes this claim.
 {¶ 27} In its judgment entry of sentence, the trial court ordered that appellant "pay any restitution, all prosecution costs, court appointed counsel costs and any fees permitted pursuant to R.C.2929.18(A)(4)."
 {¶ 28} We find that the trial court properly ordered appellant to pay the costs of prosecution as required by R.C. 2947.23. However, as this court stated in State v. Holmes, 6th Dist. No. L-02-1141, 2002 Ohio 6185, ¶ 20, "prosecution costs" do not include court-appointed attorney fees, as such can only be awarded pursuant to R.C.
 {¶ 29} 2941.51(D), which states in part that "[t]he fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay."
 {¶ 30} In Galion v. Martin (Dec. 12, 1991), Crawford App. No. 3-91-6, the Third Appellate District addressed this issue and held that:
 {¶ 31} "An indigent defendant may properly be required to pay his attorney fees only after the court makes an affirmative determination on the record in the form of a journal entry, that the defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of the legal services rendered to him. The court must then enter a separate civil judgment for the attorney fees or any part thereof that the court finds the defendant has the ability to repay. The court may not imprison the defendant in order to compel him to pay the civil judgment."
 {¶ 32} See State v. Burns (Mar. 15, 1999), Marion App. No. 9-98-21; State v. Watkins (1994), 96 Ohio App.3d 195, 198.
 {¶ 33} In the present case, the trial court did not make a determination on the record that appellant was able to pay for his court-appointed counsel. Accordingly, we find that this argument has merit.
 {¶ 34} As to appellant's claim regarding the order for payment of fees pursuant to R.C. 2929.18, we find that before imposition of a sanction pursuant to that statute, which
 {¶ 35} includes the cost of confinement and certain mandatory fines, the trial court is required to consider "the offender's present and future ability to pay the amount of the sanction. ***." R.C.2929.18(B)(6) and State v. Holmes, supra, at ¶ 21. Again, we find that there is nothing in the record indicating that the trial court considered appellant's present and future ability to pay and the court erred by ordering him to pay "any fees permitted pursuant to R.C.2929.18(A)(4)."
 {¶ 36} With respect to the court's award of restitution, a review of the record shows that the trial court did not specify an amount of restitution either at the sentencing hearing or in the judgment entry of sentence. Accordingly, we find that the trial court erred by failing to determine the exact amount of restitution as required by R.C.2929.18(A)(1). See State v. Dearing, 6th Dist. No. L-02-1050,2003 Ohio 2524; State v. Day, 6th Dist. No. L-02-1013, 2003 Ohio 1863; and State v. Jones, 6th Dist. No. L-02-1047, 2003 Ohio 1865.
 {¶ 37} Based on the foregoing, we find that while the trial court properly ordered appellant to pay costs of prosecution pursuant to R.C.2947.23, the court erred with respect to the remainder of the order and, accordingly, appellant's second assignment of error is well-taken in part and not well-taken in part.
 {¶ 38} In appellant's third and fourth assignments of error he asserts that his conviction is not supported by sufficient evidence and that it is against the manifest weight of the evidence. These arguments will be addressed together.
 {¶ 39} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence as follows: "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982),457 U.S. 21, 42.
 {¶ 40} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 41} We have thoroughly reviewed the evidence and have considered the credibility of the witnesses in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of robbery, burglary and receiving stolen property. We simply are unable to find that the greater amount of credible evidence supported acquittal more than conviction on any of the three counts.
 {¶ 42} Appellant also argues that the evidence was insufficient to find him guilty of robbery, burglary and receiving stolen property. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Marin, supra, at 175. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 43} R.C. 2911.02(A)(2), robbery, states as follows:
 {¶ 44} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 45} "***
 {¶ 46} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;"
 {¶ 47} R.C. 2911.12(A)(1), burglary, states in relevant part as follows:
 {¶ 48} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 49} "(1) Trespass in an occupied structure *** when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense."
 {¶ 50} R.C. 2913.51, receiving stolen property, states that: "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 51} Glenn Crosby, who was 90 years old and weighed 90 pounds at the time the offenses were committed against him, testified that he was driving home at approximately midnight on April 23, 2001, when his car was struck from behind. Crosby testified that he immediately stepped out of his car and as he walked toward the rear bumper a much larger man grabbed him, held him down and "picked my pockets." Crosby detailed the personal effects taken from him, which included cash from his billfold, his car and house keys, and certain collectible bills and coins. Crosby further testified that after his car was taken, he walked to a nearby post office and a city worker called the police. He stated that he was unable to provide the police with a description of his assailant because there was very little lighting in the area and he was looking down at the back of his car when he was assaulted. He stated that the car he was driving that night was a rental because his own car was in the shop and said that no one else had his permission to drive that car.
 {¶ 52} Crosby testified further that the police took him to his son's house so that he could get another house key and that he and his son returned to his house to sleep sometime between 1:00 and 3:00 a.m. He stated that his son slept in a room on the second floor and that he slept in the family room on the first floor as he always does. He was awakened at approximately 5:00 a.m. by a light shining in his face, which he thought was his son waking him. He was unable to go back to sleep so he got up and walked into the living room where he saw that the contents of a metal box from his office closet had been spilled onto the floor. He went into his office and saw that the contents of all of the cabinets and drawers had been pulled out and then went into his bedroom where he saw that all the drawers had been pulled out. He called the police, who came to his home to interview him.
 {¶ 53} Crosby identified the watch found by police in the bottom of the boat where appellant had been hiding on the morning of the robbery as being his. He also identified a waste basket found in the back seat of the rental car recovered by the police later that morning as the one taken from his home.
 {¶ 54} Several Toledo Police officers testified as to their contact with Crosby that night and as to the events leading to appellant's arrest in the morning. Officer Patrick Sutherland testified that he and his partner responded to the burglary call at approximately 5:30 a.m., engaged in the pursuit of Crosby's car shortly thereafter and, after the car was abandoned, looked for the driver. Although Officer Sutherland did not see the driver get out of the car because it had rounded a corner just ahead of the cruiser, he spotted appellant about 25 feet away from Crosby's car running through yards and jumping fences. He stated that two other officers finally found appellant hiding in a boat in a nearby back yard.
 {¶ 55} Officer Kristi Eycke, Sutherland's partner, essentially corroborated Officer Sutherland's testimony as to the events surrounding the burglary and the officers' pursuit of Crosby's car. Eycke testified that she and another officer found the person she had been chasing hiding in the boat. Officer Eycke identified appellant as the person she chased and found hiding in the boat. She further testified that within two minutes after the other officer removed appellant from the boat she searched the inside and found the Timex watch which Crosby later identified as his lying where appellant had been hiding.
 {¶ 56} The state also presented the testimony of Officer Richard Hoover, Detective Richard Singlar and Detective Terry Cousino of the Toledo Police Department, all of whom provided additional details as to their investigation of the offenses committed against Glenn Crosby on April 23, 2001. Detective Singlar testified that he found no signs of forced entry when he responded to appellant's second call of the morning reporting that his house had been burglarized. The detective further testified that when he searched appellant after taking him into custody he found a key fob and a 50-cent piece in appellant's shoe. He stated that the key fob and 50-cent piece were significant to him because the fob matched the description of the one that was on Crosby's key ring when he was robbed and because Crosby had told him he had numerous 50-cent pieces in the change purse which had been taken from him that night. Detective Singlar also testified that appellant had been in custody since April 23, 2001, and that during that time no one had contacted him to tell him that they knew of appellant's whereabouts during the time the offenses were committed.
 {¶ 57} Detective Terry Cousino testified that he processed the crime scene at Crosby's house after the burglary and stated that he was not able to get any usable fingerprints. He further testified, however, that appellant's fingerprints were found on the driver's side door of Crosby's car.
 {¶ 58} The defense presented the testimony of several individuals who stated that appellant had been with them on the night of April 22 through the early morning of April 23, 2001. Appellant's mother testified that appellant was playing cards with her, appellant's girlfriend, and his girlfriend's daughter on the evening of April 22 until approximately 6:00 a.m. on April 23, 2001. She stated that she did not pass this information on to the police because she had no way to get downtown. She also admitted that she made no attempt to call the police after appellant's arrest to tell them that her son had been with her on the night of April 23, 2001. The daughter of appellant's girlfriend testified that appellant was with them that night and that they watched a movie until she went to bed at around 11:00 p.m. She further testified that she was awakened during the night by her mother and appellant arguing but did not know what time that was. Appellant's girlfriend also testified that he was with her all night on April 22 and until approximately 6:00 on the morning of April 23, 2001. She stated that she did not go to the police with this information because she works and said she did not call the police because she did not know whom to call. She then corrected herself and stated that she did call a detective three or four times but he did not return her calls. She then said that a detective had called her back and that she asked him about appellant's case but did not tell him that appellant was with her at the time of the robbery and burglary because "we never got to that point." Finally, she said that she had told the detective that appellant was with her that night.
 {¶ 59} Based on the foregoing, we conclude that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found appellant guilty of robbery, burglary and receiving stolen property in connection with the events of April 23, 2001, as summarized above.
 {¶ 60} We have thoroughly reviewed the evidence and have considered the credibility of the witnesses in this case and we find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of robbery, burglary and receiving stolen property. We simply are unable to find that the greater amount of credible evidence supported acquittal more than conviction on any of the three counts.
 {¶ 61} Accordingly, appellant's third and fourth assignments of error are not well-taken.
 {¶ 62} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for resentencing consistent with our findings as to the imposition of consecutive sentences and as to the order for payment of certain fees and expenses. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are assessed to the parties equally.
 Judgment affirmed.