DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court following defendant-appellant Lamar Johnson's conviction and sentence for possession of crack cocaine and trafficking in cocaine. Appellant raises the following assignments of error:
 {¶ 2} "First assignment of error
 {¶ 3} "The trial court erred when it failed to suppress the illegal stop and the fruits of the subsequent illegal search and seizure of the defendant-appellant, in violation of the defendant-appellant's constitutional rights."
 {¶ 4} "Second assignment of error
 {¶ 5} "The trial court erred when it ordered the defendant-appellant to pay unspecified court costs, fees, and to make an unspecified, unsubstantiated sum of restitution."
 {¶ 6} "Third assignment of error
 {¶ 7} "The defendant-appellant was denied the effective assistance of counsel at trial, in violation of his Sixth Amendment rights."
 {¶ 8} A brief recitation of the facts is as follows. On September 19, 2002, a three-count indictment was filed charging appellant with one count of possession of crack cocaine, a third degree felony, in violation of R.C. 2925.11(A) and (C)(4)(c); one count of trafficking in cocaine, a second degree felony, in violation of R.C. 2925.03A) (2) and (C)(4)(d); and aggravated possession of drugs, a fifth degree felony, in violation of R.C.2925.11(A) and (C)(1)(a). The charges stemmed from appellant's alleged drug trafficking at a McDonald's parking lot in Toledo, Lucas County, Ohio. On September 24, 2002, appellant entered a not guilty plea.
 {¶ 9} On November 14, 2002, appellant filed a motion to suppress all evidence, including drugs and money, seized by the police on August 15, 2002. The state opposed the motion. A hearing on the motion was held on November 21, 2002; wherein, the parties presented testimony and exhibits. At the conclusion of the hearing, the trial court denied the motion. Appellant withdrew his not guilty plea and entered a plea of no contest to the lesser included offenses of possession of crack cocaine, R.C.2925.11(A)(C)(4)(b), a fourth degree felony, and trafficking in cocaine, R.C. 2925.03(A)(2)(C)(4)(d), a third degree felony.
 {¶ 10} Following appellant's December 18, 2002 conviction, a hearing was held as to the application of the funds seized during the search.[1] The state requested that the amount seized, $2,149, be applied to the $5,000 mandatory fine. Following the hearing, the trial court ordered that the funds be applied to the mandatory fine. This court ultimately granted appellant's motion for a delayed appeal.
 {¶ 11} In his first assignment of error, appellant argues that the trial court erred by failing to suppress all the evidence seized on August 15, 2002. The facts surrounding the arrest, as testified to at the suppression hearing, are as follows. Toledo Police Detective James Dec testified that as of the date of the hearing, he had been a police officer for seven years and a vice narcotics officer for five years.
 {¶ 12} Dec testified that on August 15, 2002, he and three other officers were conducting an undercover surveillance of the McDonald's parking lot at the corner of Dorr and Collingwood Streets in Toledo, Lucas County, Ohio. Dec and two officers were in an unmarked vehicle and the fourth officer was in an unmarked pick-up truck. Dec explained that they were surveilling that particular McDonald's because it was known to be a popular drug trafficking location. Dec stated that in 2002, he had been involved in at least 12 drug "busts" at that location. Describing a typical "street level" drug transaction, Dec stated that the customer often uses a cell or pay phone, at the drop-off location, and either pages or calls the drug dealer.
 {¶ 13} On August 15, 2002, Dec observed an individual, Mr. Cubbon, use the pay phone located in the McDonald's parking lot. Cubbon then sat in his vehicle next to the phone; he did not enter the restaurant.
 {¶ 14} After approximately five minutes, appellant pulled in next to Cubbon. Dec testified that when Cubbon saw appellant pull up next to him, he got out of his vehicle and approached appellant's vehicle from the passenger side window. Dec and the officers then "converged" on appellant's vehicle. Dec stated that he believed that a drug sale was about to transpire because the activities "fit the indicators of the previous arrests."
 {¶ 15} Dec testified that he approached the vehicle from the driver's side. Appellant had his head down and did not see him approach. Dec observed appellant place something on the armrest and, based upon his training and experience, Dec believed it to be crack cocaine. Dec testified that appellant was also holding crack cocaine. At that point, Dec stated that he went through the driver's window and grabbed the drugs; appellant then looked up.
 {¶ 16} Dec and Officer Matthew Kovacs drew their weapons and ordered appellant to exit the vehicle. Dec testified that they pulled appellant from the vehicle and handcuffed him on the ground. In addition to crack cocaine, Dilaudid was also found as well as approximately $2,000.
 {¶ 17} Next, appellant presented the testimony of Curtis Williams, the manager at McDonald's and appellant's cousin. Williams testified that on August 15, 2002, he was making his "rounds," which includes checking the inside and outside of the building, when he observed appellant pulling into the parking lot. Williams stated that he next observed two cars coming from different directions and an individual exit one car with a gun in his hands. Williams stated that he was approximately 30 feet away from the fracas.
 {¶ 18} Following the testimony, the court denied the motion stating that the officers had reasonable suspicion that illegal drug activity was taking place. The court pointed to the fact that it was a high crime area, prior activities in that area, and the activity observed. The court indicated that the "reasonable suspicion increased" when the officers saw the activity inside appellant's vehicle. The court stated that the contraband was in "plain view."
 {¶ 19} Appellant now contends that the officers had no reasonable basis to stop appellant because they failed to observe any illegal activity. When determining a motion to suppress, a trial court assumes the role of the trier of fact and, therefore, is in the best position to resolve factual questions and to evaluate the credibility of witnesses. State v. Vance (1994),98 Ohio App.3d 56, 58. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, an appellate court must determine as a matter of law, de novo, whether the facts meet the applicable legal standard. Id. at 58-59.
 {¶ 20} The lawfulness of an investigatory stop is governed byTerry v. Ohio (1968), 392 U.S. 1. In State v. Williams
(1990), 51 Ohio St.3d 58, 60-61, the Ohio Supreme Court stated:
 {¶ 21} "In order to warrant a brief investigatory stop pursuant to Terry, the police officer involved `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' Terry, 392 U.S. at 21. Such an investigatory stop `must be viewed in light of the totality of the surrounding circumstances' presented to the police officer. State v.Freeman (1980), 64 Ohio St.2d 291, 18 O.O.3d 472,414 N.E.2d 1044, paragraph one of the syllabus. The standard for reviewing such police conduct is an objective one: `would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' Terry, supra, at 21-22;United States v. Wright (C.A. 8, 1977), 565 F.2d 486, 489. That is, `[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' United States v. Cortez (1981),449 U.S. 411, 417."
 {¶ 22} In this case, the state argues that the police officers had a reasonable suspicion that illegal drug activity was taking place based on the fact that: (1) the surveillance location was a popular drop-off and pick-up location for drugs and that the testifying officer alone had at least 12 drug "busts" there; (2) the individual they first observed used the pay phone and then just sat in his car, he did not enter the restaurant; (3) after approximately five minutes, appellant arrived, the individual got out of his vehicle and approached appellant's vehicle through the appellant's window; and (4) Officer Dec testified that, based on his experience, the activity fit the indicators of a drug transaction. The state further asserts that Officer Dec saw crack cocaine, in plain view, in appellant's vehicle.
 {¶ 23} Looking collectively at the above facts, we find that they support a reasonable suspicion that appellant was involved in drug activity. Dec was very familiar with drug activity at the McDonald's location and the activities commonly associated with drug transactions. Further, Dec testified that he observed the crack cocaine, in plain view, through appellant's open vehicle window. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 24} In appellant's second assignment of error, he argues that the court erroneously ordered him, in the sentencing judgment entry, to pay "any restitution, all prosecution costs and any fees permitted pursuant to R.C. 2929.18(A)(4)." The state contends that at the sentencing appellant was ordered to pay the costs of the prosecution but that no restitution was ordered.
 {¶ 25} In State v. Edwards, 6th Dist. No. L-02-1132, 2004-Ohio-1970, this court recently determined that prior to ordering restitution and fees pursuant to R.C. 2929.18(A)(4), a sentencing court must make a specific finding as to the amount of restitution and to whom the restitution is to be paid. Further, when ordering fees paid under R.C. 2929.18(A)(2), the court must inquire as to the defendant's present or future ability to pay. There is no evidence in the record that, at any time prior to the sentencing judgment entry, the court made such inquiries. However, the court properly charged appellant with the prosecution costs under R.C. 2947.23.
 {¶ 26} Based on the foregoing, we find that appellant's second assignment of error is well-taken as to the court's order to pay fees and restitution, and is not well-taken concerning the court's order to pay costs.
 {¶ 27} In appellant's third assignment of error, appellant contends that he was denied the effective assistance of trial counsel because his counsel failed to request that the court waive the $5,000 fine due to appellant's indigency.
 {¶ 28} R.C. 2925.03(D)(1) and R.C. 2929.18(A)(3) provide that a defendant convicted of a third degree felony may be ordered to pay a fine of not more than $10,000. R.C. 2929.18(B)(1) further specifies that a third degree felony violation of a provision under R.C. Chapter 2925, drug offenses, requires that the court impose at least one-half of the maximum statutory fine. However, the fine may be avoided under the following circumstances:
 {¶ 29} "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." Id.
 {¶ 30} When faced with an allegation of ineffective assistance of counsel, the appellant bears the burden of proving that his counsel was ineffective since an attorney is presumed competent. Strickland v. Washington (1984), 466 U.S. 668,687-689; State v. Lott (1990), 51 Ohio St.3d 160, 174. To meet this burden of proof, he must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty. Strickland, supra; State v. Smith (1985),17 Ohio St.3d 98, 100. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of syllabus;State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 108.
 {¶ 31} This court recently addressed an ineffective assistance of counsel claim raised where a defendant's trial counsel failed to file an affidavit of indigency in order to avoid a mandatory fine. In State v. Gilmer, 6th Dist. No. OT-01-015, 2002-Ohio-2045, this court found trial counsel to be ineffective when an affidavit of indigency was not filed before the sentencing
 {¶ 32} Upon review, we find that Gilmer is distinguishable. In Gilmer, this court noted that, generally, postconviction relief would be the proper method to demonstrate the appellant's finances;[2] however, "there is enough information within the record of this case, including appellant's age and spotty work history, the financial information contained within the presentence report, and the fact that appellant was represented by appointed counsel at the trial level, to warrant a remand Indeed, we believe that it is reasonable to conclude that appellant, age forty-eight and cocaine dependent at the time of sentencing, facing nine years of incarceration and a $10,000 fine, could have proven himself indigent had he submitted a proper affidavit of indigency." Id. at ¶ 18.
 {¶ 33} The case before us lacks such a record. The mere fact that appellant was indigent for the purpose of retaining counsel "is a separate and distinct process from finding a defendant indigent for purposes of paying an imposed mandatory fine. * * *. Consequently, the fact that a defendant can or cannot raise sufficient funds to retain private counsel at the initiation of criminal proceedings is not necessarily determinative of whether or not he has the resources to pay a mandatory fine." (Citations omitted.) State v. Smith (Nov. 6, 1997), 8th Dist. Nos. 69799, 70451, and 71643.
 {¶ 34} The Smith court further noted that defense counsel's failure to file a separate affidavit of indigency prior to the time of sentencing, "does not rise to the level of ineffective assistance of counsel unless `the record shows a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed.'" (Citation omitted.) Id.
 {¶ 35} In the instant case, at appellant's arraignment, the trial court found that he should be appointed trial counsel:
 {¶ 36} "The Court: State of Ohio versus Lamar Johnson, case number 02-2824. You are Lamar Johnson.
 {¶ 37} "Mr. Johnson: Yes.
 {¶ 38} "The Court: Mr. Johnson, do you have an attorney representing you?
 {¶ 39} "Mr. Johnson: No, sir.
 {¶ 40} "The Court: Do you have the funds available to hire an attorney to represent you?
 {¶ 41} "Mr. Johnson: No.
 {¶ 42} "The Court: Do you wish the Court to appoint an attorney?
 {¶ 43} "Mr. Johnson: Yes, sir.
 {¶ 44} "The Court: Mr. Tomczak, are you willing to accept this appointment?
 {¶ 45} "Mr. Tomczak: Yes.
 {¶ 46} "The Court: The Court will make a finding of indigency, appoint attorney Tom Tomczak as attorney of record. * * *"
 {¶ 47} Nothing further was asked about appellant's financial status, and no evidence was presented before sentence to substantiate his indigency. After a thorough review, we find that the record does not clearly demonstrate that appellant was indigent, aside from the above, when he was appointed counsel. Thus, appellant has failed to show how he was prejudiced in this case, for it was not certain that if an affidavit of indigency were filed, the court would have found that appellant was incapable of paying the mandatory fine. Appellant's third assignment of error is not well-taken.
 {¶ 48} On consideration whereof, this court finds that the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. The case is remanded to the trial court for further proceedings to determine appellant's present and future ability to pay any fees permitted under R.C.2929.18(A)(4), and to further consider the issue of restitution. Costs of this appeal are assessed to appellee.
Judgment affirmed in part and reversed in part.
Knepper, J.m Pietrykowski, J., Lanzinger, J., concur.
[1] The state commenced a separate civil forfeiture action, consolidated with the above case, seeking the forfeiture of $2,149 it alleged was used or derived from appellant's commission of drug offenses. R.C. 2933.43.
[2] Cf. State v. Mendoza (July 14, 1995), 6th Dist. No. L-94-242 (Handwork, J., dissenting).