DECISION AND JUDGMENT ENTRY
{¶ 1} LaVelle Lesure appeals his convictions for aggravated burglary, aggravated robbery, kidnapping, and rape from the Lucas County Court of Common Pleas. We conclude that the court did not err in denying suppression of Lesure's pre-Miranda statement to police and find the conviction supported by the sufficiency and manifest weight of the evidence; however, the trial court erred when it did not determine the amount of restitution Lesure owed to the victim. We, therefore, affirm Lesure's conviction but reverse and remand the case to the trial court for a determination of the exact amount of restitution and his ability to pay the ordered fees.
 Facts {¶ 2} Testimony at Lesure's jury trial revealed that he broke into the house of the victim early in the morning of June 30, 2001. He found the victim asleep on her couch. She testified that she "was awakened by a gloved hand slamming down over [her] mouth." Lesure then "pushed [her] forward to the end of the couch and began to duct tape [her mouth and [she] frantically pulled the duct tape down and pleaded with [Lesure] because [she] sensed — [she] knew he was going to rape [her]." The victim testified, "I pleaded with him that I just had a hysterectomy, please don't do this to me." Lesure responded that the victim "better shut-up or he was going to slit [her] fucking throat." He then took the victim into the bedroom. The victim testified, "I feared he was going to kill me." Lesure then raped the victim.
 {¶ 3} After the rape, Lesure took two necklaces the victim was wearing. Out of fear and wanting Lesure to leave, she offered him her earrings, but Lesure declined, stating that "if they weren't diamonds they weren't worth anything to him." He then asked where her purse was and left the bedroom. When he could not find the purse, he returned to the bedroom very angry and "began squeezing [her] throat" and asking "where the fucking money was." Lesure left the bedroom again and found the purse in the kitchen. He took $400 from the purse and left the house. The victim, soon after, called 911.
 {¶ 4} A short time later, the victim was shown a photo array by detectives from the Toledo Police Department. She immediately picked Lesure's picture from the array as the man who raped her. As she stated to the detective, "the face will forever be embedded in my mind." Lesure was arrested on July 3, 2001. Before he was booked at the Lucas County Jail, he had an opportunity to speak with two detectives from the Toledo Police Department. Detective Kermit Quinn started a casual conversation but decided to have another detective present. When Detective James Trout joined them, Quinn testified that Trout "explained the seriousness of the charges, he didn't go into the charges specifically, he indicated what charges [Lesure] was facing and then told him the seriousness of the charges and Mr. Lesure responded, well, if you can guarantee that I would only do five years I'll tell you everything you want to know." Trout himself testified they were trying to explain the nature of the investigation and what the allegations were when "the spontaneous utterance came out." The detectives responded that they could not make any such arrangements and gave Lesure his Miranda warnings. At that point, Lesure requested an attorney, and the conversation stopped — even though Lesure stated he wanted to talk with detectives further.
 {¶ 5} Lesure was charged in a five count indictment for a number of offenses arising out the June 30, 2001 event. A motion to suppress Lesure's statement to the police detectives was denied. A jury trial was then held, and Lesure was found guilty on all counts.
 Lesure's Assignments of Error {¶ 6} "The trial court erred when it denied defendant-appellant's motion to suppress his statements in violation of his rights under the Ohio and U.S. Constitutions."
 {¶ 7} "Defendant-appellant's convictions are against the manifest weight of the evidence."
 {¶ 8} "Defendant-appellant's convictions are not supported by sufficient evidence and are therefore a denial of due process."
 {¶ 9} "The trial court erred when it ordered defendant-appellant to pay unspecified court costs, fees, and to make an unspecified unsubstantiated sum of restitution."
 First Assignment of Error {¶ 10} Lesure argues he should have been read his Miranda rights as soon as he arrived at the police station. His statement that he would tell detectives what they wanted to know in exchange for a five year prison term, he argues, should be suppressed. We disagree because the detectives did not question Lesure so as to deliberately elicit an incriminating response.
 {¶ 11} As was stated by the Tenth District Court of Appeals, "[w]e begin our analysis from the premise that appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. During proceedings on suppression motions, the trial court assumes the role of trier of fact. Accordingly, the evaluation of evidence and credibility of witnesses are issues to be determined by the trial court. An appellate court is to accept the trial court's factual findings unless they are `clearly erroneous.' In other words, an appellate court must accept the factual determinations of a trial court so long as they are supported by competent and credible evidence. The application of the law to those facts, however, is then subject to de novo review." State v. Tolliver, 10th Dist. No. 02AP-811, 2004-Ohio-1603, at ¶ 38. (Citations omitted.)
 {¶ 12} Lesure's motion to suppress — and the hearing that followed — concerned whether his statement was afforded protection under Miranda. We find that it does not.
 {¶ 13} The United States Supreme Court in Miranda v. Arizona (1966),384 U.S. 436, ruled that defendants have certain rights when they are subject to custodial interrogation. It stated that "by custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id., at 444. Here, both sides agree that Lesure was in custody; therefore, the only issue was whether he was being interrogated by the detectives when he made the arguably inculpatory statement.
 {¶ 14} The United States Supreme Court in Rhode Island v. Innis
(1980), 446 U.S. 291, refined the issue of what constitutes interrogation. "We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id., at 300-302. (Footnotes omitted.) (Emphasis in original.)
 {¶ 15} The Ohio Supreme Court in State v. Tucker (1998),81 Ohio St.3d 431, 436, added that "the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion." The United States Supreme Court, however, has held "that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." Oregon v.Elstad (1985), 470 U.S. 298, 314. And it has further specified that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself." Arizona v. Mauro (1987), 481 U.S. 520, 529.
 {¶ 16} Courts have held likewise when faced with situations similar to this case. See, State v. Evans (2001), 144 Ohio App.3d 539, 551-553,564; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553; Westv. State (Ala.App., 1987), 511 So.2d 258, 263-264; State v. Smith
(1999), 193 Ariz. 452, 457-458; People v. Henson (Cal.App., Mar.29, 2002), 5th Dist. No. F036144. But see, State v. Lentz (1991),73 Ohio App.3d 449, 451-452. In particular, courts do not consider it to be interrogation where a suspect makes statements after he is informed by the police of the charges against him. State v. Tucker, 1st Dist. No. C-020821, 2003-Ohio-6056, at ¶ 10-14; United States v. Johnson (Mar. 6, 1995), C.A.4 No. 94-5225; Burgess v. State (Ala.App., 1998),827 So.2d 134, 172-176. Additionally, casual conversations about potential plea agreements have been deemed not to be interrogation either. United States v. Moody (C.A. 6, 2000), 206 F.3d 609, 615-616.
 {¶ 17} When the trial court denied Lesure's motion to suppress orally at the December 17, 2001 pre-trial hearing, it stated he was not subject to interrogation. The trial court found that the two detectives were explaining that the pending charges were serious; they were not asking him to comment upon his guilt or innocence. Furthermore, the detectives were speaking with Lesure before booking, so this was the first "kind of official notification of the changes" that he received. Also, the trial court found that "an argument can be made that the defendant has the right to know exactly what he is in custody for and what the police are investigating." The trial court further stated that the detective's question as to whether Lesure knew the charges were serious was rhetorical, merely requiring a yes or no answer. Lesure responded in a different way: "indicating that he would be willing to perhaps make a deal or tell what he knows in return for a certain sentence is not a response to whether or not he knows that these offenses are serious, and again, one cannot but realize that these types of offenses are serious." The trial court also concluded that the detectives acted properly in telling Lesure of the charges against him because he could then knowingly waive or not waive his Miranda rights accordingly.
 {¶ 18} After carefully reviewing the record, we hold that the factual findings made by the trial court were not "clearly erroneous" but were supported by "competent and credible evidence"; the decision is affirmed. As a matter of law, we find that voluntary statements made by a suspect after he is informed of the charges against him but beforeMiranda warnings are given are not the result of interrogation. The first assignment of error is found not well-taken and denied.
 Second and Third Assignments of Error {¶ 19} Lesure's second and third assignments of error address sufficiency and manifest weight of the evidence. Manifest weight of the evidence means that a greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has noted: "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42. To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.
 {¶ 20} Here, the factfinder was the jury that heard testimony, observed body language, evaluated voice inflections, observed hand gestures, perceived the interplay between witness and examiner, and watched each witness's reaction in the courtroom. During appellate review, we are to accord due deference to the credibility determinations made by the factfinder. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} Sufficiency of the evidence asks whether the evidence is legally adequate to support a verdict on all elements of an offense.State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 22} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Lakewood v. Dorton, 8th Dist. No. 81043, 2003-Ohio-1719, at ¶ 32, citing State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462.
 {¶ 23} We have carefully reviewed the proceedings in this matter, especially the testimony by the victim and by Lesure. Lesure's main argument is that the victim mistakenly identified him and no evidence connected him to the crime. A wealth of evidence was presented at trial, however, to show that Lesure committed these crimes, including the swift and positive identification by the victim of her assailant and Lesure's own statement to the police. There was sufficient evidence presented, and the jury's verdict was not against the manifest weight of the evidence. Accordingly, the second and third assignments of error are found not well-taken.
 Fourth Assignment of Error {¶ 24} Lesure argues in his fourth assignment of error that the court erred when it ordered him to pay unspecified court costs and restitution. He is correct, and we remand this case for a hearing to determine the amount of restitution owed to the victim and Lesure's ability to pay the fees ordered by the trial court.
 {¶ 25} This court recently determined that prior to ordering restitution and fees pursuant to R.C. 2929.18(A)(4), a sentencing court must make a specific finding as to the amount of restitution and to whom the restitution is to be paid. Further, when ordering fees paid under R.C. 2929.18(A)(2), the court must inquire as to the defendant's present or future ability to pay. There is no evidence in the record that the court asked the questions before the sentencing judgment entry. The court did properly charge appellant with prosecution costs under R.C. 2947.23.State v. Johnson, 6th Dist. No. L-03-1046, 2004-Ohio-2458, citing Statev. Edwards, 6th Dist. No. L-02-1132, 2004-Ohio-1970. See, also, State v.Davis, 6th Dist. No. L-01-1387, 2003-Ohio-5977, at ¶ 34-37.
 {¶ 26} Since the trial court did not determine Lesure's ability to pay, or specify the exact amount of restitution that he was to pay to the victim, this case must be reversed and remanded to the trial court solely on that issue. The fourth assignment of error, therefore, is found well-taken.
 {¶ 27} Upon due consideration, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Lesure's conviction is affirmed, and the case is reversed and remanded to the trial court for further proceedings to determine appellant's present and future ability to pay any fees permitted under R.C. 2929.18(A)(4) and to further consider the issue of restitution to arrive at a specified amount that should be paid to the victim. Costs of this appeal are assessed to the appellant and the appellee in equal share.
Judgment affirmed in part and reversed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Lanzinger, J. concur.