UNITED STATES of America,
Plaintiff—Appellee,

v.

Jose Manuel ACOSTA–TAPIA,
Defendant—Appellant.

United States of America,
Plaintiff—Appellee,

v.

Marcos Antonio Ortiz, Defendant—
Appellant.

Nos. 02–10427, 02–10429.
D.C. Nos. CR–01–00183–1–HDM,
CR–01–00183–HDM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 2003.

Decided July 10, 2003.

886

Before HUG, GIBSON* and FISHER, Circuit Judges.

## MEMORANDUM**

█ Appellants Jose Manuel Acosta–Tapia and Marcos Antonio Ortiz appeal from the judgment of the district court following their guilty pleas to one count of conspiracy to possess methampethamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Because the relevant facts are known to the parties, we discuss them here briefly and only as necessary.

Appellants contend that Ortiz did not give valid consent to search his vehicle because of the language barrier between him and officers and because he could not read the written consent form that he signed. We review for clear error the district court's determination of whether a defendant's consent to search was voluntary. *United States v. Todhunter*, 297 F.3d 886, 891 (9th Cir.2002).

Given the extent of the language barrier between the officers and the appellants, exemplified by Trooper Sines's testimony that he knows only "a couple of words" in Spanish and that he questioned Ortiz in a mixture of English and improvised Spanish, this case lies at the margin of voluntary consent. As the district court noted, however, Ortiz was able to converse with the officers, and his answers were responsive to their questions. When the officers asked Ortiz where he had come from and where he was going, Ortiz responded with names of places. When they asked him how long he had known Acosta, he responded with a number of months. When Sines asked Ortiz for the vehicle registration, Ortiz looked for it in the glove compartment and produced it, and when Sines asked Ortiz to exit the vehicle, Ortiz did so. Although Sines did not explicitly tell Ortiz when he asked for consent that he would be searching the car for drugs, the object of the search was clear from the context of the officer's questions, as Sines asked for consent immediately after asking whether there were drugs or guns in the car. *See United States v. Rich*, 992 F.2d 502, 506–07 (5th Cir.1993). In light of Ortiz's responsiveness to Sines's questions, we cannot conclude that the district court clearly erred when it found that Ortiz's consent to search was freely and intelligently given. *See United States v. Perez*, 37 F.3d 510, 515 (9th Cir.1994) (rejecting defendant's claim that he did not understand officers' request for consent when his answers to the officers' other questions were responsive).

█ Appellants also contend that the district court erred when it found that the search did not exceed the scope of Ortiz's consent. We review for clear error the district court's determination of whether a search exceeded the scope of the subject's consent. *Perez*, 37 F.3d at 515.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (internal quotation marks omitted); *see also United States v. Cannon,* 29 F.3d 472, 477 (9th Cir. 1994). If a suspect's consent "would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Jimeno,* 500 U.S. at 252.

Ortiz signed a written form in which he gave consent to the officers to search "all containers or items located in the interior and/or exterior of the vehicle" and "any compartments which may need to be accessed by the use of tools." Although the evidence indicates that Ortiz was unable to read or comprehend the form, Sines was unaware of Ortiz's limited reading ability. Indeed Ortiz appeared to read the form line-by-line before signing it. Under these circumstances, the typical reasonable person would have understood that Ortiz was giving the officers consent to remove the glove box and search behind it.[1]

We note, however, that the officers could have eliminated any question about the consent in this case by reading the Spanish translation of the consent form aloud to Ortiz, who was largely illiterate but could understand spoken Spanish. If an interpreter is unavailable to translate when English-speaking officers confront Spanish-speaking motorists, the officers should carry note cards or phrase books with the relevant phrases and questions, if not the entire text of the consent form, translated into phonetic Spanish, so that they are able to read the form aloud to suspects from whom they are seeking consent to search. We agree with the district court that although there is sufficient evidence of voluntary consent to uphold the search in this case, there is no justification for the officers' failure to read the Spanish translation of the consent form to Ortiz.

The judgment of the district court is AFFIRMED.

---

**1.** It is therefore of little significance whether the officers knew that under Nevada state law, general consent to search does not include consent to disassemble the vehicle, because it was reasonable for the officers to believe that Ortiz gave specific consent for them to access hidden compartments.