[Cite as *State v. Arce*, 2025-Ohio-1091.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-24-008

      Appellee                                   Trial Court No. 2023 CR 0260

v.

Jeffrey Arce                                     **<u>DECISION AND JUDGMENT</u>**

      Appellant                                  Decided: March 28, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellant.

Jeffrey P. Nunnari, for appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is a state appeal of a January 24, 2024 judgment of the Wood County

Court of Common Pleas, granting Jeffrey Arce's ("appellee") October 2, 2023 motion to

suppress, finding that appellee's verbal consent to law enforcement to search his motor

vehicle during a traffic stop on I-75 was involuntary, under the totality of the

circumstances, as appellee's English language barrier prevented him from giving

knowing, voluntary consent to the search.  All parties concur that appellee's primary

language is Spanish.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, the State of Ohio, sets forth the following sole assignment of error:

"The trial court committed reversible error when it granted Arce's motion to suppress."

{¶ 3} The following undisputed facts are relevant to this appeal.  On May 17, 2023, Detective Sergeant Moore and Deputy Zimmerman of the Wood County Sheriff's Office were on duty on I-75, parked in a stationary position observing southbound traffic, in the course of new deputy drug interdiction training with Zimmerman.

{¶ 4} While observing southbound freeway traffic, Moore noticed a green Dodge Durango with Florida plates drive past her position.  Moore was not running speed radar, and acknowledged that she did not perceive the vehicle to be speeding, or otherwise driving unlawfully, as it drove past.  However, on the articulated basis of the vehicle having out-of-state plates and driving on I-75, known by law enforcement to be a drug transit corridor, Moore pulled onto the freeway and began to follow Arce.  Upon observing that the license plate on appellant's car had expired the prior week, Moore initiated a traffic stop.

{¶ 5} After stopping Arce and approaching his vehicle, Moore detected the scent of an air freshener, which she found to be suspicious.  Moore noted that Arce was on his mobile phone and was speaking in Spanish.  Arce held out his phone and requested to Moore that the party on the other end of the mobile phone call serve as a translator for

their communications. As acknowledged by Moore, Arce's primary language is Spanish. Moore declined the request for a translator. The record reflects that their ensuing communications were labored and muddled. Moore eventually determined that the motor vehicle belonged to Arce's wife, and that Arce's Florida driver's license was valid.

{¶ 6} Moore continued questioning Arce in English regarding the purpose of his presence in Ohio, and she conveyed that she was uniformly suspicious of his responses. Arce reiterated to Moore that his English was not good. Arce again asked Moore to speak with someone on his mobile phone who could act as a translator. Again, Moore declined to do so.

{¶ 7} Subsequently, Moore inquired of Arce if he had anything unlawful in the motor vehicle, Arce held out his phone, and again asked Moore to speak to the party on the phone as a translator. Moore again declined, replying, "I want to talk to you [Arce]." Thereafter, Moore repeated the question to Arce regarding contents of the vehicles, and Arce did not reply. After further attempted communications, Moore then physically pointed at Arce's vehicle, and stated to Arce, in the affirmative, "You're good if we look?" Arce replied, "Excuse me?" Moore rephrased, and next stated to Arce, using language suggestive of a directive, "I said[,] you're okay with us looking in the vehicle," after which, Arce shrugged his shoulders, and finally replied, "No problem." During the ensuing vehicle search, a box of sex toys, cocaine, and $18,000 in cash was recovered.

{¶ 8} At this juncture, Moore attempted to Mirandize Arce, in English. Upon determining that Arce was not adequately understanding the Miranda recitation in English, and now acknowledging Arce's English language barrier, despite previously

refusing to allow a translator for Arce, Moore tells Arce, "I'm going to see if I can get a translator, someone to speak Espanol [to you]." Moore secured a Spanish interpreter, who was made available to Arce over the phone, and Arce's Miranda rights were then recited to him in Spanish by the translator, enabling Arce to give knowing acknowledgement of those rights.

{¶ 9} After Arce was Mirandized in Spanish, Moore then instructed the interpreter to communicate to Arce that the case outcome would depend upon his cooperation with law enforcement. Arce's reply, translated to English as, "I don't know what you're saying." Upon hearing the translated reply, Moore then took the mobile phone away from Arce and terminated his conversation with the interpreter.

{¶ 10} On June 8, 2023, Arce was indicted on one count of trafficking in cocaine, in violation of R.C. 2925.03, a felony of the first degree, one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree, one count of money laundering, in violation of R.C. 1315.55, a felony of the third degree, and one count of possession of criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree.

{¶ 11} On September 7, 2023, Arce filed a motion to suppress on the basis of his English language barrier. On October 2, 2023, the trial court conducted the motion to suppress hearing, at the conclusion of which it took the matter under advisement. On January 24, 2024, the trial court granted the motion to suppress.

{¶ 12} On January 24, 2024, in finding that Arce's consent to search the vehicle was not knowing, and therefore not voluntary, given Arce's English language barrier, as

all communications regarding consent to search were conveyed to Arce in English, the trial court held, in relevant part,

> *When [Moore] said, '[Y]ou're good if we look?' and followed that up with [after Arce failed to reply] 'I said you're okay with us looking in the vehicle,' Did he understand that she was going to search his vehicle and that he had a choice in whether the search took place or not?  That is not clear, in part because her second statement to him is an imperative as opposed to a question * * * In reviewing the totality of the circumstances * * * the Court is not convinced that Defendant's consent was freely and voluntarily given considering the words used to request the consent and the Defendant's lack of understanding of the English language * * * Therefore, having found that the consent to search his vehicle was not freely and voluntarily given[,] the search of Defendant's vehicle was improper under the Fourth and Fourteenth Amendments to the United States Constitution.*

(Emphasis added).

{¶ 13} This appeal ensued.

{¶ 14} In the sole assignment of error, appellant argues that the trial court erred in granting Arce's motion to suppress.  We are not convinced.

{¶ 15} It is well-established, as set forth by this court in *State v. Escobedo*, 2023-Ohio-3410, ¶ 34 (6th Dist.),

> Our review of the trial court's judgment, denying [or granting] the motion to suppress in each case, presents a mixed question of law and fact.  *State v. Davis*, 133 Ohio App.3d 114, 117, 726 N.E.2d 1092 (6th Dist. 1999), citing *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997); *see also State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court determines factual questions and is in the best position to consider the credibility of the witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. (Citations omitted), *Burnside* at ¶ 8.

{¶ 16} In conjunction, as relevant to the core issue of whether Arce's consent was voluntary, given Arce's English language barrier, as held by the Ohio Supreme Court in *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997),

> In sum, every search situation is unique unto itself and no set of fixed rules will be sufficient to cover every situation. For that reason, *Bustamonte* utilized the totality-of-the-circumstances test to determine when consent is voluntary. Such a test serves both interests of allowing police to legitimately investigate under varying circumstances while protecting individuals from unreasonable searches and seizures. *Id*. at 225, 93 S.Ct. at 2046, 36 L.E.2d at 861. We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances: When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given * * * Voluntariness is a question of fact to be determined from all the circumstances.

{¶ 17} We shall now apply the above-detailed governing legal guidelines to the facts in this case, as reflected in the transcripts of the suppression hearing. Moore was the first witness to testify at the hearing. Moore testified that on May 17, 2023, she was on duty, observing southbound traffic on I-75, performing drug interdiction with trainee Zimmerman. Moore then explained that she did not wear a body cam on that day, testifying, "I accidentally wore mine home the night before. And when I got back to the office that morning, it was dead. So I put it on the charger in my office when we went out, and that's why I didn't have mine on."

{¶ 18} When questioned on direct examination regarding the English language barrier issue, Moore conceded, "I believe that English was not his primary language." Regarding her English language request to Arce for consent to search the vehicle, Moore testified, "I said 'So then do you mind -- so you don't mind us looking then.' And he

said, 'What?' And I said[,] 'You don't mind us looking in the vehicle then.' He said[,] 'No problem.'"

{¶ 19} Divergent from the above-quoted testimony, the record shows, and Moore acknowledged upon cross, that what she actually stated to Arce was, "[Y]ou're good if we look?", and when Arce did not reply, then Moore stated, "I said you're okay with us looking in the vehicle," after which Arce shrugged his shoulders, and then finally said, "No problem." Given this exchange, with a person with a limited understanding of the English language, the record is unclear whether Arce understood what was being asked of him. In conjunction, and as likewise determined by the trial court, the record is also unclear whether Arce understood Moore's statement to be a question, rather than a directive, given the above-quoted language, framed in the affirmative, used by Moore.

{¶ 20} Regarding Arce being subsequently Mirandized in Spanish, at her initiation, after attempts at doing so in English failed, and despite previously rejecting Arce's requests for a translator, Moore testified, "*I did that because I provided him Miranda waivers in English first. And part of that Miranda waiver is do you understand, to which he said a little bit. So at that point I requested a translator to provide him Miranda [with English to Spanish translation].*" (Emphasis added).

{¶ 21} Upon cross-examination, inquiry was made of Moore, "Why did you pull out and start following it? [Arce's vehicle]" Moore replied, "Because of the direction it was traveling and out-of-state plates." Further inquiry was made, "So it's against the law to drive southbound in a car with out-of-state plates?" Moore replied, "No," but she ended there, providing no further context.

**{¶ 22}** Inquiry was then made of Moore, "When you first came into contact with [Arce], he was on his cell phone, is that correct?" Moore replied, "Correct." Inquiry was next made, "And he advised you that he didn't speak English; is that correct?" Moore replied, "Correct." Lastly, inquiry was made, "In fact [Arce] even tried handing you the phone to speak with the other person?" Moore replied, "[Y]eah." The record shows, and Moore does not dispute, that Arce sought permission for a translator multiple times prior to Moore ultimately doing so, after the consent to search communications had already occurred in English.

**{¶ 23}** Inquiry was next made of Moore, "But you understood the fact that [Arce] had trouble with English[?]" Moore conditionally replied, "I understood that English was not his primary language." When asked to confirm that questions posed to Moore in English had to be repeated and rephrased numerous times, Moore replied, "*If I rephrased the question, it wasn't because I didn't feel like he didn't understand it. And I'm not sure like what part was rephrased. Like I definitely repeated stuff.*" (Emphasis added).

**{¶ 24}** When asked to explain the above-discussed, disparities between her written police report and her suppression hearing testimony regarding the language she used in seeking verbal consent to search, Moore stated, "*I worked 16 hours that day * * * Uh-huh. You got it. Sometimes I make mistakes. You got me.*" (Emphasis added).

**{¶ 25}** Regarding the difficulty Mirandizing Arce due to his English language barrier, inquiry was made of Moore, "*Meaning, he did not understand the Miranda rights [in English]; is that true?*" Moore replied, "*Meaning – yeah. So that's when I said I*

*would get a translator   * * * I asked for interpreter because -- that was part of Miranda, do you understand.*"  (Emphasis added).

{¶ 26} The hearing then concluded and the motion was taken under advisement. On January 24, 2024, the trial court granted Arce's motion to suppress upon determining that, under the totality of the circumstances, the English language barrier had compromised the consent to search as, "[T]he Court is not convinced that Defendant's consent was freely and voluntarily given considering the [affirmative] words used [suggesting an imperative] to request the consent and the Defendant's lack of understanding of the English language."

{¶ 27} We are guided in our consideration of this matter by the analogous case of *State v. Guerrero-Sanchez*, 2017-Ohio-8185, ¶ 26, 28 (2d Dist.), which likewise entailed the English language barrier of a Spanish-speaking defendant, arguably compromising the verbal consent to search done in English,

> Guerrero-Sanchez first claims the statements he made to Agent Swallen and Detective Walters should have been suppressed because the statements were involuntary due to his inability to understand the English language.  In determining whether a pretrial statement is involuntary, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation.

{¶ 28} As further held in *Guerrero-Sanchez*, ¶ 31, 33, in finding that the language barrier in that case did not compromise the verbal consent to search,

> *Swallen and Walters testified that Gerrero-Sanchez communicated with them in English throughout the encounter without a problem and that Guerrero-Sanchez did not mention the language barrier until after Swallen asked him about the drugs in the suitcase * * * [T]he totality of the*

*circumstances indicate that Guerrero-Sanchez understands and speaks the English language at a level sufficient to have understood Swallen's questions and that he voluntarily complied with the officers.*

(Emphasis added).

{¶ 29} Conversely, the record in the instant case shows that Arce promptly raised the language barrier issue upon the traffic stop, Arce was heard by Moore speaking in Spanish as she approached his vehicle, Arce held out his mobile phone multiple times during the traffic stop requesting of Moore that the party on the other line serve as a translator, Arce replied nonverbally to many questions, questions had to be rephrased and repeated numerous times, as conceded by Moore, and, significantly, subsequent to Moore's request to search the vehicle being done in English, Moore herself obtained an English to Spanish language translator to Mirandize Arce in Spanish due to his inability to sufficiently understand the Miranda recitation in English.

{¶ 30} We have carefully reviewed and considered this matter. We find it incongruous to maintain that Arce's English language barrier did not prevent him from understanding and speaking the English language at a level sufficient to have understood Moore's consent to search the vehicle communications in English, so as to properly give knowing consent to the search, while simultaneously acknowledging that Arce's English language barrier did prevent him from understanding and speaking the English language at a level sufficient to have properly understood and acknowledged his Miranda rights in English, done subsequently during the same traffic stop, and requiring the provision of an English to Spanish translator to ensure Arce's understanding of the Miranda rights.

**{¶ 31}** Given these unique facts and circumstances, in accord with *Robinette* and *Guerrero-Sanchez*, we find that, under the totality of the circumstances, the record does not show that Arce understood the English language at an adequate level to have understood Moore's English-language consent to search communications to him, so as to have given a knowing, voluntary consent to search the vehicle. Thus, upon our independent review, we find that the trial court's motion to suppress determination was supported by competent, credible evidence. Accordingly, we find appellant's assignment of error not well-taken.

**{¶ 32}** On consideration whereof, the judgment of the Wood County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____
                                       JUDGE

Gene A. Zmuda, J. _____
CONCUR.
                                       JUDGE

Charles E. Sulek, P.J. _____
CONCURS AND WRITES
SEPARATELY.
                                       JUDGE

**SULEK, P.J., concurring.**

{¶ 33} I concur with the majority's decision to affirm the judgment of the trial court, granting Arce's motion to suppress. I write separately to emphasize that this is a close case and there is also competent, credible evidence that would support a finding that Arce did voluntarily consent to the search.

{¶ 34} "To rely on the consent exception of the warrant requirement, the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427 (1988), quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *State v. Casi*, 2020-Ohio-3063, ¶ 42 (6th Dist.). "'[W]hether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.'" *Posey* at 427, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

{¶ 35} "[A] trial court's decision regarding consent will not be overturned unless it is clearly erroneous." *Casi* at ¶ 42, citing *United States v. Bueno*, 21 F.3d 120, 126 (6th Cir. 1994). The "clearly erroneous" standard is the same as the civil manifest-weight-of-the-evidence standard. *State v. Wilson*, 2007-Ohio-2202, ¶ 21. Thus, the trial court's decision will not be overturned if there is "some competent, credible evidence" to support it. *Id.*; *see also State v. Lesure*, 2004-Ohio-3454, ¶ 11 (6th Dist.), quoting *State v. Tolliver*, 2004-Ohio-1603, ¶ 38 (10th Dist.) (When reviewing a ruling on a motion to suppress, "[a]n appellate court is to accept the trial court's factual findings unless they are 'clearly erroneous.' In other words, an appellate court must accept the factual

determinations of a trial court so long as they are supported by competent and credible evidence.").

{¶ 36} "The existence of a language barrier can vitiate consent," *United States v. Lopez-Guzman*, 145 Fed.Appx. 627, 629 (10th Cir. 2005), and "the State's burden to prove voluntary consent is heavier when it appears the defendant does not readily speak and understand the English language." *State v. Guerrero-Sanchez*, 2017-Ohio-8185, ¶ 44 (2d Dist.), citing *State v. Rodriguez*, 2013-Ohio-491, ¶ 21 (8th Dist.); *United States v. Hernandez*, 443 Fed.Appx. 34, 40 (6th Cir. 2011). "In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police." *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999); *State v. Zaragoza*, 2017-Ohio-7944, ¶ 27 (2d Dist.); *United States v. Valdez*, 147 Fed.Appx. 591, 596 (6th Cir. 2005); *see also United States v. Rivera-Romero*, 198 F.3d 240 (5th Cir. 1999), quoting *United States v. Alvarado*, 898 F.2d 987, 991 (5th Cir. 1990) ("[I]n regard to Spanish speaking defendants, where there is sufficient conversation between the suspect and law enforcement officers to demonstrate that the suspect had an adequate understanding of English to fully comprehend the situation, a finding that consent was voluntary may be proper.").

{¶ 37} Multiple federal courts have affirmed a trial court's finding of voluntary consent under circumstances similar to those present here.

{¶ 38} For example, in *United States v. Zubia-Melendez*, 263 F.3d 1155, 1163 (10th Cir. 2001), "[t]he officer asked to search the vehicle for drugs and Appellant, who did not speak good English, replied, 'No, never.' The officer then asked again to search

the vehicle and the Appellant replied 'Yeah, no matter.'" In affirming the district court's

denial of the motion to suppress, the Tenth Circuit reasoned:

> The next question, then, is whether Appellant truly understood
> Officer Heim's question before giving his consent. We acknowledge that
> Appellant has trouble speaking and understanding English; the videotape of
> the traffic stop demonstrates his confusion at several points during the
> encounter, and he testified at the suppression hearing with the assistance of
> an interpreter. Appellant admitted at the suppression hearing, however, that
> he understood the officer's request for his name, identification, and
> ownership of the vehicle. Indeed, the district court specifically found at the
> suppression hearing that Appellant and Officer Heim "could converse
> sufficiently to understand one another, both with respect to [Appellant's]
> understanding of what was said to him in English and also what was said by
> Trooper Heim in the few Spanish words that he used." We do not find the
> district court's conclusion in this regard to be clearly erroneous, and
> therefore find that Appellant had sufficient familiarity with the English
> language to understand and respond to Officer Heim's request.

*Id.*

{¶ 39} In *Zapata*, 180 F.3d at 1242, the Eleventh Circuit held that the district court

did not clearly err when it found the defendant consented to the search, stating:

> In this case, Lorenzo conversed at length with Phillips in English. Lorenzo
> told him that he had rented the minivan and that Appellants were traveling
> from Miami to Boston. Lorenzo told Phillips that Appellants were making
> the trip because Zapata's mother was having problems. Lorenzo told
> Phillips that Appellants were staying in Boston for three days and that he
> had rented the minivan for four days. In response to two questions from
> Phillips, each differently worded, Lorenzo twice gave his consent to search
> the minivan. There is no evidence that Lorenzo was confused by, or did not
> understand, any of Phillip's questions. Rather, Lorenzo's intelligent
> interaction with Phillips indicates that he was capable of understanding that
> Phillips was requesting his consent to search. The purported limitations on
> Lorenzo's understanding of English did not preclude him from making 'an
> essentially free and unconstrained choice' to grant Phillip's request to
> search the minivan.

**{¶ 40}** In *United States v. Valdez*, 147 Fed.Appx. 591, 596 (6th Cir. 2005), the Sixth Circuit affirmed the trial court's finding of voluntary consent, holding that "[t]he record establishes that Valdez could understand, and interact with, Trooper Moore. When asked to produce his license, Valdez readily complied. Valdez also appropriately responded to questions about his destination and his relationship with Lopez. These facts demonstrate that Valdez understood English well enough to give consent."

**{¶ 41}** The Ninth Circuit similarly affirmed the trial court's denial of a motion to suppress in *United States v. Acosta-Tapia*, 69 Fed.Appx. 885, 886 (9th Cir. 2003), holding:

> As the district court noted, however, Ortiz was able to converse with the officers, and his answers were responsive to their questions. When the officers asked Ortiz where he had come from and where he was going, Ortiz responded with names of places. When they asked him how long he had known Acosta, he responded with a number of months. When Sines asked Ortiz for the vehicle registration, Ortiz looked for it in the glove compartment and produced it, and when Sines asked Ortiz to exit the vehicle, Ortiz did so. Although Sines did not explicitly tell Ortiz when he asked for consent that he would be searching the car for drugs, the object of the search was clear from the context of the officer's questions, as Sines asked for consent immediately after asking whether there were drugs or guns in the car. . . . In light of Ortiz's responsiveness to Sines's questions, we cannot conclude that the district court clearly erred when it found that Ortiz's consent to search was freely and intelligently given.

**{¶ 42}** Finally, in *United States v. Ramos-Rivera*, 64 Fed.Appx. 153, 155 (10th Cir. 2003), the Tenth Circuit, in finding no clear error in the district court's denial of a motion to suppress, rejected Ramos-Rivera's argument that "the fact that he was Mirandized in Spanish indicates his understanding of English was insufficient" to consent to a search of his vehicle. It reasoned that the district court found, based on its review of

the videotape and encounter, that Ramos-Rivera understood the trooper's questions and that "in the course of the conversation there was only one question Mr. Ramos-Rivera did not understand, and that related to the relationship between Mr. Ramos-Rivera and his uncle." *Id.*

{¶ 43} Here, Arce was able to communicate with Moore, informing her of where he was coming from, where he was going, why he was in Toledo, and how long he had been there. He produced the appropriate documents upon Moore's request. He similarly complied with the instructions of Moore and Zimmerman to step out of the vehicle, place his hands on top of the car, get into the back of Moore's patrol car, and put his feet into the car. He responded directly to Moore's questions regarding whether he had any weapons, drugs, or money. Finally, while he was in the back of Moore's patrol car, the person he was speaking to on the phone was speaking to him in English, asking about the ongoing search of the car. All of this supports a finding that Arce sufficiently understood the English language to be able to comprehend the situation and to give informed and voluntary consent.

{¶ 44} Nonetheless, based on the standard of review and the burden imposed on the State to demonstrate the voluntariness of the consent, I concur that there is competent, credible evidence supporting the trial court's judgment for the reasons set forth in the majority decision.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.